## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ARTURO CANO,

     Petitioner,

v.                        CASE NO. 8:17-cv-2436-T-60JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

### ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Arturo Cano petitions under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his ten convictions for sexual offenses including sexual battery on a minor and lewd and lascivious molestation of a minor. The respondent argues that some grounds are procedurally barred (Doc. 13 at 9, 24, 30, 36) and all remaining grounds are without merit. Upon review of the petition, the response and exhibits in support of the response (Doc. 13, 13-1), and the reply (Doc. 21), the Court finds as follows:

### Factual and Procedural Background[1]

Cano lived next door to the four-year-old female victim and fondled her when she visited his home. Three years later Cano moved in with the victim's family and began to perpetrate more serious forms of sexual abuse. For eight years Cano repeatedly sexually abused the victim. Cano arranged for the victim to be

_____

[1] The summary of the facts derives from the state appellate court's opinion affirming Cano's convictions and sentences. *Cano v. State*, 884 So. 2d 131, 132–33 (Fla. 2d DCA 2004).

homeschooled in eighth grade to reduce the likelihood that his crimes would be discovered.

Cano eventually moved out of the victim's home, and the victim told her mother about the sexual abuse.  When the victim's mother confronted Cano, Cano did not deny the abuse and instead responded violently.  The victim's mother did not speak English and delayed in reporting the sexual abuse to police.  Several months later police started an investigation.

The victim, who was sixteen years old, called Cano on the telephone while police monitored the call.  During the call the victim falsely accused Cano of giving her herpes.  Cano denied it but only because he claimed that he saw a doctor frequently and did not have the disease.  When the victim told Cano that her mother was going to have Cano charged with sexually molesting the victim, Cano did not deny the molestation.

The victim told police that she saw child pornography on Cano's computer including nude photographs of herself.  After getting a search warrant for Cano's home, police seized computer equipment, videotapes, and other property. A videotape depicted Cano placing his hand in the victim's pants while he gave her a manicure.  The victim testified that Cano put his finger in her vagina.

A jury found Cano guilty of the ten counts and not guilty of one count, and the trial court sentenced Cano to life on two counts and 37.3 years on the remaining counts.  The state appellate court affirmed the convictions.  After the state court denied Cano post-conviction relief, Cano filed the federal petition in this case.

## Legal Standards

**A.    AEDPA**

Because Cano filed his federal petition after the enactment of the
Antiterrorism and Effective Death Penalty Act of 1996, AEDPA governs the review
of his claims. *Lindh v. Murphy*, 521 U.S. 320, 336–37 (1997). AEDPA modified
28 U.S.C. § 2254(d) and created a highly deferential standard for federal court
review of a state court adjudication by requiring:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim —
>
> (1)    resulted in a decision that was contrary to, or
>        involved an unreasonable application of, clearly
>        established Federal law, as determined by the
>        Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an
>        unreasonable determination of the facts in light
>        of the evidence presented in the State court
>        proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) interprets this constraint on
the power of the federal habeas court to grant a state prisoner's petition:

> Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrives at a conclusion opposite
> to that reached by this Court on a question of law or if the state
> court decides a case differently than this Court has on a set of
> materially indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant the writ
> if the state court identifies the correct governing legal principle
> from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

Clearly established federal law refers to the holdings of the U.S. Supreme Court's opinions at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"The focus . . . is on whether the state court's application of clearly established law is objectively unreasonable . . . ." *Bell v. Cone*, 535 U.S. 685, 694 (2002). An unreasonable application is "different from an incorrect one." *Id.* Even clear error is not enough. *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "This is 'meant to be' a difficult standard to meet." *LeBlanc*, 137 S. Ct. at 1728 (quoting *Richter*, 562 U.S. at 102).

A factual determination by the state court is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). If "'[r]easonable minds reviewing the record might disagree'" about the state court's finding, the federal habeas court cannot supplant the determination. *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)). A federal habeas court may grant relief if "in light of the evidence presented in the state court proceedings, no reasonable jurist would agree with the factual determinations upon which the state court decision is based." *Raleigh v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 938, 948–49 (11th Cir. 2016).

Also, a state court's factual determinations are presumed correct, and a petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The purpose of federal review is not to re-try the state case.  "[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694.  "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).  Consequently, "review under [Section] 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).  *Accord Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1294–95 (11th Cir. 2015) (applying *Pinholster* to Section 2254(d)(2)).

If the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons in the opinion and defers to those reasons if reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  If the last state court decision is without reasons, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* at 1192.  The unexplained decision by the last

state court is the decision that is owed deference under AEDPA. *Marshall v. Sec'y, Fla. Dep't Corrs.*, 828 F.3d 1277, 1285 (11th Cir. 2016).

## B. Ineffective Assistance of Counsel

Cano asserts ineffective assistance of counsel — a difficult claim to sustain. "'[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)) explains:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, [466 U.S. 668] (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*,
>
> > First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

The post-conviction court is "free to dispose of ineffective assistance claims on either of its two grounds." *Sims*, 155 F.3d at 1305. "There is no reason for a court deciding an ineffective assistance of counsel claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To meet this burden the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. As *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992) clarifies, the burden is much higher:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*Accord Jones v. Barnes*, 463 U.S. 745, 751 (1983) (explaining that counsel does not have a duty to raise a frivolous claim).

Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

## Exhaustion and Procedural Default

The respondent argues that Ground Two, Ground Eight in part, Ground Nine, and Ground Ten are procedurally barred.  (Doc. 13 at 9, 24, 30, 36) A petitioner must exhaust the remedies available in state court before a federal court can grant relief on federal habeas.  28 U.S.C. § 2254(b)(1)(A).  The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971).  The state court must have the first opportunity to review and correct any alleged violation of a federal right.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim.  *Rhines v. Weber*,

544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982).  If the state court would deny the claim as procedurally barred under state law, the federal court instead denies the claim as procedurally defaulted.  *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

A federal court also denies a claim as procedurally defaulted if the state court denied the claim on independent and adequate state procedural grounds.  *Coleman*, 501 U.S. at 729–30.  The last state court reviewing the federal claim must clearly and expressly state that the ruling rests on the state procedural bar.  *Harris v. Reed*, 489 U.S. 255, 263 (1989).  If the last state court rejected the federal claim in an unexplained decision, the federal habeas court looks through the unexplained decision to the last reasoned order to rule on the claim.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  If the last reasoned order imposed a state procedural bar, the federal court presumes that the later unexplained decision did not silently disregard the bar and consider the merits.  *Id.*

A petitioner may excuse a procedural default on federal habeas by showing cause for the default and actual prejudice from the alleged violation of federal law.  *Maples v. Thomas*, 565 U.S. 266, 280 (2012).  Cano concedes that some grounds are procedurally defaulted (Doc. 1 at 9, 45, 51 and Doc. 21 at 2–5) and cites *Martinez v. Ryan*, 566 U.S. 1 (2012) to excuse the procedural default.

*Martinez* holds that (1) when a state court requires a defendant to raise an ineffective assistance of counsel claim in a collateral proceeding, a petitioner can (2) establish cause by showing either that the state court did not appoint him

counsel in the proceeding or that appointed counsel was ineffective for failing to raise the claim and (3) establish prejudice by showing that the claim is a substantial one, or has "some merit." *Martinez*, 566 U.S. at 14.  A Florida court requires a defendant to raise an ineffective assistance of counsel claim in a collateral proceeding and Cano was not appointed counsel in his state post-conviction proceeding.  *Trevino v. Thaler*, 569 U.S. 413, 423–28 (2013); *Robards v. State*, 112 So. 3d 1256, 1266–67 (Fla. 2013).  Consequently, Cano must show that the procedurally defaulted grounds have "some merit."  *Martinez*, 566 U.S. at 14.

## Ground Two

Cano asserts that trial counsel was ineffective for not objecting to the admission of burglary and aggravated battery charges which were pending against him in another state criminal case.  (Doc. 1 at 9)  Cano raised the same claim in a supplemental post-conviction motion and the post-conviction court dismissed the claim as follows (Doc. 13-5 at 122–23):

> The Defendant's Memorandum of Law and Supplemental Motion were both filed after the expiration of the two-year time limitation. The two-year time limitation period, however, does not apply to enlargement of issues raised in a timely sworn initial motion for post-conviction relief.[3] Accordingly, the Defendant's Memorandum will be treated as timely. But, if an amendment raises new issues, then that amendment must be filed within the two-year time limitation.[4] Thus, the Defendant's Supplemental Motion, which raises Grounds VI and VII, is time barred.
>
> [3] *Bulley v. State*, 857 So. 2d 237, 239 (Fla. 2d DCA 2003).
> [4] *Beard v. State*, 827 So. 2d 1021 (Fla. 2d DCA 2002) (citing *Gaskin v. State*, 737 So. 2d 509 (Fla. 1999)).

Cano concedes that the state court dismissed claim as untimely (Doc. 1 at 9), which procedurally defaults the claim on federal habeas. *Whiddon v. Dugger*, 894 F.2d 1266, 1266–67 (11th Cir. 1990). Cano fails to show that the claim has "some merit" because the pending charges were relevant and admissible. Consequently, trial counsel was not ineffective. *Meders v. Warden, Ga. Diag. Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019) ("It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained.").

The burglary and aggravated battery charges were inextricably intertwined with the sexual offenses. After he moved out of the victim's home, Cano unexpectedly returned drunk, pushed the victim, punched her new friend Lupe Gonzalez in the chest and ripped his shirt off, and threatened her brother with a pocketknife. (Doc. 13-3 at 288, 292–99) Police arrested Cano for burglary. (Doc. 13-3 at 300, 361–62, 722–23) The victim and her mother went to court to get a domestic violence injunction against Cano. (*Id.* at 300) The victim disclosed Cano's sexual abuse to a victim's advocate at the court. (*Id.*) The advocate took the victim and her mother to the police station to report the sexual abuse. (*Id.* at 301) The police's investigation into the sexual offenses arose from that initial report.

The burglary and aggravated battery charges explained both how the victim ultimately disclosed the sexual offenses to police and how Cano was romantically infatuated with the victim even after he left her home. *Conde v. State*, 860 So. 2d 930, 948 (Fla. 2003); *Pickett v. State*, 254 So. 3d 1162, 1167 (Fla. 3d DCA 2018). In opening statements and closing argument, the prosecutor referred to the pending

charges only for those limited relevant purposes.  (Doc. 13-3 at 212–13, 814–15, 857–58, 865–66)

Trial counsel also sought the admission of the pending charges to explain why Cano told the victim on the recorded telephone call that "they're going to send me off to prison . . . 25 to life."  (Doc. 13-3 at 45–51, 323)  Cano testified that he referred to the potential prison sentence for the pending burglary charge. (Doc. 13-3 at 723–24)  Without admission of the pending charges, the jury could have concluded that Cano referred to the potential prison sentence for the sexual offenses.  Consequently, trial counsel made a reasonable, strategic decision to not object to the admission of the pending charges.  *Strickland*, 466 U.S. at 690–91. Because Cano cannot show that Ground Two has "some merit" under *Martinez*, the ground is procedurally barred.

### **Ground Eight, Trial Sub-claim — Handwritten Notes**

Cano asserts that that the trial court violated his constitutional right to present evidence by prohibiting admission of handwritten notes that the victim forged in her mother's name to excuse her absences at school.  (Doc. 1 at 40).  The sub-claim is unexhausted because Cano did not raise the claim on direct appeal (Doc. 13-4 at 43) and the state court would deny the claim on state procedural grounds if Cano returned to exhaust the claim.  (Doc. 13 at 24–25)  Fla. R. Crim. P. 3.850(c).  Cano cites *Martinez* to excuse the procedural default (Doc. 21 at 23), but *Martinez* applies only to ineffective assistance of trial counsel claims.  *Chavez v.*

*Sec'y, Fla. Dep't Corrs.*, 742 F.3d 940, 945 (11th Cir. 2014).  Consequently, the sub-claim of trial error in Ground Eight is procedurally barred.

## Ground Eight, Trial Sub-claim — Disqualification

Cano asserts that the trial court violated his due process and fair trial rights by denying his motion to disqualify the trial judge.  (Doc. 1 at 39)  Because Cano cited *In re Murchison*, 349 U.S. 133 (1955) and *Offutt v. United States*, 348 U.S. 11 (1954) in his state appellate brief (Doc. 13-4 at 62), he fairly presented the federal nature of his claim to the state appellate court. *Lucas v. Sec'y, Dep't Corrs.*, 682 F.3d 1342, 1352 (11th Cir. 2012).  *Accord Padalla v. State*, 895 So. 2d 1251, 1252 (Fla. 2d DCA 2005) (holding that a state appellate court can review a disqualification claim based on due process for first time on appeal).  Consequently, Cano is entitled to review of this sub-claim on the merits.

## Ground Nine

Cano asserts that trial counsel was ineffective for not adequately examining several witnesses at trial.  (Doc. 1 at 42–43)  Cano contends that Jaime Bracero could have testified that the victim's mother was angry and jealous and threatened to call police to report that Cano sexually abused the victim ("sub-claim A"), the victim's mother, Eliza Mena, Mattie Lynn, and Ginni Spencer could have testified that Cano never performed oral sex on them and never demanded that they perform oral sex on him ("sub-claim B"), and the victim, her mother, and Sarah Allred could have testified that the victim's mother threatened to have Cano killed, Cano moved

out of the home because of the death threat, and the victim based her accusations against Cano on sex that she had with boyfriends ("sub-claim C").  (Doc. 1 at 42–44)

The ground is unexhausted because Cano did not raise the claims on post-conviction appeal (Doc. 13-5 at 185–209) and the state court would deny the claims on state procedural grounds if Cano returned to state court to exhaust the claims.  Fla. R. Crim. P. 3.850(b), (h); *O'Sullivan*, 526 U.S. at 845.  Cano cites *Martinez* to excuse the procedural default (Doc. 1 at 45) but does not show that the sub-claims have "some merit."  *Martinez*, 566 U.S. at 14.

Because Cano does not support the ground with affidavits or deposition testimony to show that the witnesses would have testified in the manner that he contends, the ground is speculative.  *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit."); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) ("[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.").

Even if the witnesses would have testified in the manner that Cano contends, the proposed testimony would not have exculpated Cano.  *Reed v. Sec'y, Fla. Dep't Corrs.*, 767 F.3d 1252, 1264 (11th Cir. 2014).  Testimony about threats by the victim's mother to report the sexual abuse to police ("sub-claim A") tends to prove that Cano did sexually abuse the victim.  Testimony about Cano's lack of interest in

oral sex with adult women ("sub-claim B") does not undermine evidence that Cano sexually abused the minor victim.  Testimony about threats by the victim's mother to have Cano killed ("sub-claim C") tends to prove that the mother believed that Cano sexually abused the victim.  Lastly, evidence that the victim had sex with other boyfriends before reporting the sexual abuse was not relevant to show the victim's general knowledge about sex.  The victim, who was 16 years old when she reported the crimes, was old enough to know about sex.  (Doc. 13-3 at 281, 301) *Frederic v. State*, 770 So. 2d 719, 720–21 (Fla. 4th DCA 2000).  Because Cano does not show that the sub-claims have "some merit," Ground Nine is procedurally barred.[2]

## Ground Ten

Cano asserts cumulative error based on trial counsel's failure to investigate and object to police misconduct ("sub-claim A"), trial counsel's failure to adequately question potential jurors during *voir dire* ("sub-claim B"), trial counsel's failure to object to the prosecutor's comments eliciting sympathy for the victim and her mother ("sub-claim C"), and trial counsel's failure to move to suppress the audio recording of the controlled telephone call ("sub-claim D").  The ground is unexhausted because Cano did not raise a cumulative error claim with sub-claim C in state court (Doc. 13-5 at 62–67, 197–98), and the state court would deny the

---

[2] Cano asserts for the first time in his reply that his due process rights were violated because Eliza Mena testified about his pretrial detention. (Doc. 21 at 25) New claims may not be raised in the reply and the brief reference to Cano's pretrial detention did not violate due process. *Oliveiri v. United States*, 717 F. App'x 966, 967 (11th Cir. 2018); *United States v. Villabona-Garnica*, 63 F.3d 1051, 1058 (11th Cir. 1995).

cumulative error claim with sub-claim C if Cano returned to state court to exhaust the claim.  Fla. R. Crim. P. 3.850(b), (h); *O'Sullivan*, 526 U.S. at 845.[3]  Cano cites *Martinez* to excuse the procedural default (Doc. 21 at 28) but does not show that the cumulative error claim has "some merit." *Martinez*, 566 U.S. at 14.

**Sub-claim A**

Cano asserts that trial counsel was ineffective for not investigating and objecting to misconduct by the police.  The post-conviction court denied this sub-claim as follows (Doc. 13-5 at 127–28) (state court record citations omitted):

> The Defendant alleges that his counsel failed to dispute the police misconduct, which included tampering with the evidence. The Defendant claims that the [p]olice had edited the audiotape of the controlled phone call between him and the victim. The Defendant asserts that his statement that he takes the victim to the doctors was inaudible. The Defendant alleges that the videotape of the nail services was also edited and the removed part was that the Defendant gave [the victim's mother] a manicure. The Defendant further contends that the videotape containing the manicure session was illegally seized from his business.
>
> Upon review of the record, the controlled phone call was not edited or tampered with. There were sections that are unintelligible but simply because the court reporte[r] [was not] able to transcribe them does not mean that the jury was unable to hear them. Additionally, the part of the tape concerning the doctor has no relevance to the charged offenses.
>
> [Victim]:      When you used to do things to me that — you used to go out with other people, how do you know you didn't get it from them?
>
> Mr. Cano:    I don't have any things like that.

---

[3] Cano raised an additional sub-claim about a defective oath in state court. (Doc. 1 at 47 and Doc. 13-5 at 64–66, 100–09, 197–98) Cano raised that sub-claim for the first time on federal habeas in his reply. (Doc. 21 at 27) New claims may not be raised in the reply and the state court did not unreasonably apply *Strickland* by denying the sub-claim. (Doc. 13-5 at 128–29) *Oliveiri v. United States*, 717 F. App'x 966, 967 (11th Cir. 2018).

[Victim]:       How do you know?

Mr. Cano:       Because I always go to the doctor.

[Victim]:       — (unintelligible) — you never took me to
                the doctor.

Mr. Cano:       I never told you that — (unintelligible) —
                are you — (unintelligible) —

[Victim]:       No, I have herpes.

Furthermore, the Defendant in his own testimony was able to
convey to the jury that one of the unintelligible portions of the
tape explained that he had taken the victim to the doctor.

[Counsel:]      All right. And do you recall then when
                there was something said about you've
                gone to the doctor and — did you say
                anything back to [the victim] then about
                her going — you having taken her to the
                doctor?

[Cano:]         Yes, I did. But yesterday that part was
                messed [up] on the tape so the jury
                couldn't hear, because I told her, I always
                take you to the doctor and the dentist
                [. . . .]

[Counsel:]      And this was after she said something
                about you never take me or took me to the
                doctor?

[Cano:]         That was my answer, that I always take
                you to the doctor and the dentist [. . . .]

In regard[ ] to the videotape, the entire length of the videotape
was one hour. The Court instructed the Defendant's counsel
and the State Attorney to play the parts of the tape that are
relevant to their respective arguments.

The Court:      Rule of entirety, you can play whatever
                portions you think that are relevant to
                show the matters that you want to argue.
                So — you know, if they skip over that part
                or something, that's fine. In cross-exam,
                or however you want to do it — because
                the whole tape's in evidence, you can have
                the ability to play what you wish to play.

17

> The alleged part of the tape that the Defendant asserts was
> edited out [—] [the victim's mother's] manicure [—] was
> irrelevant to proving or rebutting the charged offenses. The
> Defendant refers to his business and upon review of the record,
> an actual business location was not searched[.] [H]owever, the
> police did execute two search warrants at: (1) the Defendant's
> residence, and (2) his storage unit. The police seized the
> videotape while executing one of these two search warrants.
> Accordingly, the Defendant's motion on this basis is denied.

Trial transcripts substantiate the testimony and recordings quoted in the

state court's order.  (Doc. 13-5 at 138, 145, 152)  Whether the edited or inaudible

parts of the recordings were relevant to the charged offenses is an issue of state law,

and a state court's determination of state law receives deference in federal court.

Fla. Stat. §§ 90.401 and 90.402; *Machin v. Wainwright*, 758 F.2d 1431, 1433

(11th Cir. 1985) ("The federal courts must defer to a state court's interpretation of

its own rules of evidence and procedure.").  The detective and the victim established

a chain of custody for the recordings.  (Doc. 13-3 at 308–09, 537–39)  *Armstrong*

*v. State*, 73 So. 3d 155, 171–72 (Fla. 2011).  The detective testified that police seized

the incriminating videotape from Cano's home after getting a search warrant.

(Doc. 13-3 at 537–40)  An inventory attached to the executed warrant confirms this.

(Doc. 13-2 at 18–27)  Cano failed to carry his burden under *Strickland*.  *Meders*, 911

F.3d at 1354.

## Sub-claim B

Cano asserts that trial counsel was ineffective for not adequately questioning

potential jurors during *voir dire*.  The post-conviction court denied this sub-claim as

follows (Doc. 13-5 at 129):

The Defendant contends that his counsel was ineffective [for] not conducting an adequate *voir dire* examination. In support, the Defendant contends that his counsel failed to inquire of the prospective jurors whether they would be biased in favor of the testimony of law enforcement officers. The Defendant claims that his counsel failed to inquire about racial prejudice that the prospective jurors had against Hispanics.

The Defendant has failed to sufficiently allege that he was prejudiced by counsel's omission. The Defendant has not provided evidence that any unqualified jurors served in his case and that any juror was biased based on the Defendant's race or in favor of the law enforcement officers' testimony.[24]

> [24] *See Davis v. State*, 928 So. 2d 1089, 1117 (Fla. 2005) ("[E]ven if we were to conclude that this failure rendered trial counsel's performance deficient, Davis has failed to demonstrate how this prejudiced these proceedings. Davis has not provided evidence that any unqualified juror served in this case, that any juror was biased or had an animus toward the mentally ill or persons suffering from drug addiction.").

Because Cano failed to identify in his post-conviction motion any potential juror who was biased and served (Doc. 13-5 at 67), the state court did not unreasonably apply *Strickland*. *Brown v. Jones*, 255 F.3d 1273, 1279–80 (11th Cir. 2001); *Teague v. Scott*, 60 F.3d 1167, 1172–73 (5th Cir. 1995) ("Demonstrating that some veniremen may have been biased, without establishing that any of these biased veniremen actually served on the jury, is insufficient to meet the requisite showing of prejudice under the *Strickland* test.").[4]

---

[4] Cano's claim that trial counsel failed to ask potential jurors about their exposure to publicity (Doc. 1 at 47) is denied for the same reason. Also, the state court did not unreasonably apply *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017) (Doc. 21 at 27) because the state court's decision predates the opinion. *Greene v. Fisher*, 565 U.S. 34, 39 (2011).

**Sub-claim C**

Cano asserts that trial counsel was ineffective for not objecting to specific comments by the prosecutor during closing argument. Cano contends that the comments elicited sympathy for the victim and her mother. Cano did not present the sub-claim in state court. (Doc. 13-5 at 62–67, 197–98)

**Comment One and Comment Two**

Cano asserts that trial counsel was ineffective for not objecting to the following comments by the prosecutor: (1) after Cano left, the victim had to become the head of the household to pay all the bills on time and (2) the victim's contact with police was an unfortunate and terrible event in her life. (Doc. 1 at 47–48) The victim testified that she became responsible for managing the finances at home after Cano left. (Doc. 13-3 at 396–97). Also, the victim testified that she broke down crying with her mother before disclosing Cano's sexual abuse to the court advocate who helped her report it to police. (Doc. 13-3 at 301–02). Because an objection to the comments would not have succeeded, trial counsel was not ineffective. *Silvia v. State*, 60 So. 3d 959, 977 (Fla. 2011) ("The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence.") (citation and quotations omitted).

**Comment Three**

Cano further asserts that trial counsel was ineffective for not objecting to the comment by the prosecutor that the victim's mother was an "illiterate ignorant woman incapable of taking care of her children and [ ] her finances because she did

not speak English."  (Doc. 1 at 47–48)  Cano contends that the prosecutor

improperly elicited sympathy for the victim and her mother.  (Doc. 1 at 47–48)

Transcripts refute the allegation that the prosecutor called the victim's mother

"illiterate" or "ignorant."[5]  The prosecutor told the jury that the victim's mother had

a job laminating T-shirts, made less money than Cano, and had Cano pay the bills

because she did not speak English and was unable to do so.  (Doc. 13-5 at 210–12,

855–56)  Because these comments did not ask the jury to show sympathy for either

the victim or her mother, an objection would not have succeeded, and trial counsel

was not ineffective.  *Rodriguez v. State*, 210 So. 3d 750, 755 (Fla. 5th DCA 2017)

("A prosecutor's request that the jury show sympathy for the victim . . . is clearly

improper.  Such statements have been uniformly condemned because they may

inflame the minds and passions of jurors.") (citations and quotations omitted).[6]

## Sub-claim D

Cano asserts that trial counsel was ineffective for not moving to suppress the

audio recording of the controlled telephone call with the victim.  The post-conviction

court denied this sub-claim as follows (Doc. 13-5 at 130–31) (state court record

citations omitted):

> The Defendant alleges that his counsel was ineffective [for]
> failing to move to suppress the audiotape. In support, the
> Defendant asserts that the audiotapes were altered and the
> victim was acting as a governmental agent in the controlled

---

[5] Transcripts cited by Cano do not support the sub-claim. (Doc. 13-5 at 210, 212, 218, 261, 395, 407, 433, 445, 537, 538, 582)

[6] Cano further asserts that trial counsel was ineffective for not investigating the victim's mother and speculates that trial counsel would have discovered that the prosecutor's comments about her were false. (Doc. 1 at 47–49) *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.").

phone calls. The Defendant claims that the victim used
Detective Perez's suggestions to control the phone calls.

Recordings of telephone conversations are admissible evidence
as long as one party has consented to the tape recording.[25] In
the present case, the victim consented to the tape recordings
and, as such, they were admissible evidence.

> [25] *See* § 934.03(2)(c), Fla. Stat.

[Prosecutor:]  And was this call recorded on audiotape?

[Victim:]        Yes.

[Prosecutor:]  Did you agree to do that?

[Victim:]        Yes.

Accordingly, the Defendant's counsel was not deficient by his
omission.

Transcripts substantiate the quoted testimony by the victim in the order.

(Doc. 13-5 at 142)  Whether the audio recording was admissible is an issue of state

law, and a state court's determination of state law receives deference in federal

court.  Fla. Stat. § 934.03(2)(c); *Machin*, 758 F.2d at 1433.  Cano speculated that

police tampered with the recording.  *Tejada v. Dugger*, 941 F.2d 1551, 1559

(11th Cir. 1991).  Because the recording was admissible, the state court did not

unreasonably apply *Strickland*.  *Meders*, 911 F.3d at 1354; *Armstrong*, 73 So. 3d

at 171–72.

### **Cumulative Error**

Because the individual sub-claims, including the unexhausted sub-claim C,

were without merit, the cumulative error claim does not have "some merit" and is

procedurally barred.  *Martinez*, 566 U.S. at 14; *Morris v. Sec'y, Dep't Corrs.*,

677 F.3d 1117, 1132 (11th Cir. 2012).

## Analysis

The state court's rejection of the remaining grounds warrants deference under Section 2254(d).  (Opinion Affirming Judgment and Sentence, Doc. 13-4 at 110–19); (Order Denying Motion for Post-Conviction Relief, Doc. 13-5 at 121–31); (Order Denying Petition Alleging Ineffective Assistance of Appellate Counsel, Doc. 13-4 at 201)  Cano's federal petition presents the same grounds that he presented in state court.

### A.    Federal Claims Before Trial

### Ground Seven

Cano asserts that the trial court violated his Fourth Amendment right against unreasonable searches and seizures by denying his motion to suppress evidence seized from his home.  (Doc. 1 at 35–38)  Cano contends that police relied on a warrant affidavit with stale information, material omissions, and an opinion by an unqualified expert.  (Doc. 1 at 36)  In the affidavit, a detective stated that the victim reported that (1) Cano sexually abused her and (2) she observed nude photographs of herself and other minors on Cano's computer.  (Doc. 13-2 at 22)   The detective opined that Cano likely still had the illegal photographs on his computer eight months later, even after he moved to a new home, because child molesters do not delete those types of photographs.  (Doc. 13-2 at 23–25)

After hearing testimony by witnesses and reviewing the affidavit, the trial court orally denied the motion as follows (Doc. 13-2 at 171–74):

> I understand [*Flanagan v. State*, 625 So. 2d 827 (Fla. 1993)]
> and the analysis. I've read those kind[s] of cases, and that deals
> with somebody coming on and testifying in trial that this

person is exhibiting the traits of a child molester, for example, and then the jury has been allowed to use that in deciding whether or not the person's guilty or not; or this victim is exhibiting the traits of a person who's been molested, it's consistent with somebody being molested, and then the jury has been allowed to use that as evidence, as substantive evidence to show that the defendant is guilty.

I think that's different from what we've got in here. And I read [*Haworth v. State*, 637 So. 2d 267 (Fla. 2d DCA 1994)], which was pretty close, and they never do say it couldn't be used, the expertise part of it. It doesn't say that. It just says that you look at the four corners of the affidavit. And there wasn't probable cause and they talked about staleness.

So I do agree with [the wording] in one of these Federal cases where I'm willing to assume that collectors of child pornography keep their materials indefinitely. And I am, too, based on all the testimony I've heard. However, I think that the information provided by Detective Curry in the affidavit through his expertise, through his background, through his knowledge, through his experience could not provide the only basis to establish probable cause to search for computers. But I believe that it's information that can be used by the Court along with the analysis of the other information in the affidavit. It should not just be disregarded.

I don't find that there was any intentional omissions or inaccuracies stated in the affidavit. Although there are some, I agree, I don't think they rise to the level of an intentional attempt to mislead the Court, which would be such that items should be added or excised from the affidavit.

I believe that the staleness argument is one certainly worth making on it because of the dates in issue. However, I believe that photographs and information seen on a computer is very analogous to like videotapes and things like that [—] that the staleness is not as great an issue as if it's a perishable-type item. Although, the point is well made you can delete things and get things off the hard drive. I do understand that, but I don't think that is determinative of the staleness issue, particularly when you do give some weight to the expertise part of it, which I am giving. That certainly helps that.

And when you combine that with the other information in the affidavit, I think that it gives a fair probability that the evidence of the crime would be found.

24

There's a concern about the location of the computer, I agree. I
understand that. But if I'm willing to accept the expertise part
of it, then you can go from that [—] that the computer would go
with the person wherever he may be, so then it doesn't become
an important factor or as important a factor. But it is one of
concern.

So there are two, in my eyes, two legitimate issues. I'm denying
the motion, but there are two legitimate issues in this: (a)
Detective Curry's part of the affidavit; and then the other part
that is of some concern is [(b)] where the computer was,
whether he even had it with him any more. And I understand
what you're saying on that.

So that will be something for the appeals court. If there's a
conviction obtained, those are the two main issues. And my
reading from the State cases, there isn't anything that says, no,
you can't use that. They don't flat out say that. There are some
cases where warrants were not upheld where that was part of
the warrant.

Maybe this will be the case where they say, no, you just flat-out
can't use it, or, yes, you can. I don't know. We'll find out on it.
Will they follow the more Federal approach or not? I don't
know.

The state appellate court affirmed the ruling in a written opinion as follows

(Doc. 13-4 at 115–19):

Mr. Cano argues that his motion to suppress the videotape
should have been granted primarily because the trial court
considered an affidavit containing a psychological profile of sex
offenders. This profile described the typical person who
commits repeated sex crimes involving one targeted child and
those persons who involve themselves with child pornography
on computers and the internet. He argues that such a sworn
statement cannot provide probable cause for a search because
it does not pass the *Frye* test. For support, Mr. Cano relies
primarily on the supreme court's decisions in *Flanagan
v. State*, 625 So. 2d 827 (Fla. 1993), and *Hadden v. State*,
690 So. 2d 573 (Fla. 1997).

In *Flanagan*, the supreme court held that expert testimony
based on a sex offender profile was inadmissible at trial in a
capital sexual battery case because the profile did not meet the
requirements for novel scientific evidence under *Frye*, 625
So. 2d at 828. The prosecution offered this testimony in

*Flanagan* to establish that the defendant was the person who committed the sexual battery and to imprison the defendant for life. *Id.* at 829. The evidence presented to the jury was regulated by the Florida Evidence Code and the decision of guilt needed to be based on evidence beyond a reasonable doubt. Although the supreme court held that the evidence of a sex offender profile should not have been introduced, it concluded that the error was harmless.

In *Hadden*, the supreme court decided that evidence of a "child sexual abuse accommodation syndrome" was also inadmissible at trial under the *Frye* standard. 690 So. 2d at 575. In *Hadden* that evidence was used to help establish that the alleged victim was in fact sexually abused. *Id.* at 575–76. The use of this testimony was not harmless in *Hadden*.

In this case, the affidavit of the deputy described his experience and his knowledge or beliefs about the tendencies of child sexual offenders who utilize computers and cameras. We are not entirely convinced that the deputy provided expert testimony in his affidavit or that his testimony should be regarded as expert scientific evidence, but we make that assumption for purposes of this opinion. Neither the deputy nor the magistrate relied on this evidence to decide whether the young girl was a victim of sexual abuse or whether Mr. Cano was the perpetrator. This evidence was utilized merely to determine the scope of the search and to conclude that the other evidence supporting the search was not stale.[5] The issue of staleness was decided in a context where the underlying sexual misconduct had been ongoing for many years and the evidence about the digital photographs in the computer was about eight months old.

> [5] Interestingly, this additional evidence helps distinguish this case from *Burnett v. State*, 848 So. 2d 1170 (Fla. 2d DCA 2003). In *Burnett*, we held an officer's affidavit was facially insufficient when it lacked any factual basis to support a probable cause determination. *Id.* at 1175. In many respects, the additional affidavit in this case is designed to overcome the problem presented in *Burnett*.

Under section 933.04, Florida Statutes (2001), the magistrate used this evidence to determine the existence of probable cause, not to determine a fact beyond reasonable doubt. In determining probable cause, a magistrate considers the totality of the circumstances and evaluates evidence to establish a

"probability, and not a *prima facie* showing, of criminal activity." *Illinois v. Gates*, 462 U.S. 213, 235, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969)). A magistrate can quite properly issue a search warrant "on the basis of [his or her own] nontechnical, commonsense judgments," and may apply a standard less demanding than those used in more formal legal proceedings. *Gates*, 462 U.S. at 236, 103 S. Ct. 2317. A search warrant results in a limited invasion of privacy and property rights and does not directly affect liberty in the way that a criminal trial affects liberty.

It is well established that a search warrant can be issued based upon affidavits and hearsay evidence. *See Lara v. State*, 464 So. 2d 1173 (Fla. 1985). There is no requirement that probable cause to issue a search warrant be based only on evidence that would be competent at trial. 68 Am. Jur. 2d *Search and Seizure* § 185 (2000). The type of thorough consideration given at trial to relevance or to the prejudicial effect of evidence versus its probative value is not feasible or appropriate when a magistrate issues a search warrant. The restrictive standards of *Frye*, while not entirely out of place when issuing a warrant, are not essential to that process. Moreover, the *Frye* approach to novel scientific evidence contemplates an adversarial hearing that occurs only when the opposing party objects to the evidence. *Hadden*, 690 So. 2d at 580. This methodology is not particularly adaptable to the procedures used to obtain a search warrant under chapter 933, Florida Statutes (2001). The only out-of-state case that we have located addressing this issue refused to apply the *Frye* procedures to a magistrate's *ex parte* decision to issue a search warrant. *See Fitzgerald v. State*, 153 Md. App. 601, 837 A. 2d 989, 1016 (Md. Ct. Spec. App. 2003).

We do not wish to minimize the importance of a warrant or the evidence required to establish probable cause. We are not encouraging magistrates to issue warrants based on junk science or superstition. However, in this context, we believe that the affidavit contained some relevant and material evidence that helped justify the scope of the search and helped overcome any issue of staleness. Accordingly, we conclude that the trial court did not err in refusing to suppress the videotape seized during the search and that this tape was properly admitted into evidence during the trial.[6]

> [6] Our ruling is limited to the videotape. The photographs and other evidence that were seized

during this search, which may be used to prove
the offenses alleged in the severed counts, are
not in our record and are not involved in this
appeal.

Because the state court provided Cano an opportunity for full and fair
litigation of the Fourth Amendment claim, Cano is not entitled relief on federal
habeas. *Stone v. Powell*, 428 U.S. 465, 494 (1976). The trial court resolved facts in
dispute after an evidentiary hearing and applied law to those facts. *Mincey v. Head*,
206 F.3d 1106, 1126 (11th Cir. 2000). The state appellate court fully considered the
claim and concluded that the affidavit supported the search of Cano's home and the
seizure of the videotape. *Peoples v. Campbell*, 377 F.3d 1208, 1226 (11th Cir. 2004).

Cano contends that he did not have a full and fair opportunity because trial
counsel was ineffective during the suppression hearing. (Doc. 21 at 20–21).
Whether trial counsel was ineffective at the suppression hearing does not impact
whether state court fully and fairly considered the Fourth Amendment claim.
*Kimmelman v. Morrison*, 477 U.S. 365, 382–83 (1986) ("In summary, we reject
petitioners' argument that *Stone*'s restriction on federal habeas review of Fourth
Amendment claims should be extended to Sixth Amendment ineffective-assistance-
of-counsel claims which are founded primarily on incompetent representation with
respect to a Fourth Amendment issue.").[7]

Cano also contends that he did not have a full and fair opportunity because
the defense was unable to confront the experts with whom the detective consulted to

---

[7] In Ground Three and Ground Five, Cano claims that trial counsel was ineffective for not
filing an expanded motion to suppress. (Doc. 1 13–14, 23–27) Cano is entitled to a review of those
grounds on the merits.

prepare the affidavit.  (Doc. 21 at 20–21)  At the suppression hearing, Cano had the

burden to show any knowing or reckless misrepresentations or omissions in the

affidavit.  *United States v. Novaton*, 271 F.3d 968, 986–87 (11th Cir. 2001).  The

defense presented its own expert who challenged the expert opinions in the

affidavit.  (Doc. 13-2 at 77–81)  Ground Seven is denied.

## **Ground Eight, Trial Sub-claim — Disqualification**

Cano asserts that the trial court violated his due process and fair trial rights

by denying his motion to disqualify the trial judge.  (Doc. 1 at 39).  The state

appellate court denied the ground as follows (Doc. 13-4 at 114–15):

> On appeal, Mr. Cano first challenges the order denying his
> motion to disqualify Judge Gilner. This motion alleges only
> that Judge Gilner issued the search warrant and, as a result of
> this act, should be disqualified from hearing the motion to
> suppress evidence obtained as a result of the warrant. We
> conclude that this motion is facially insufficient.
>
> The fact that a judge has made adverse rulings in the past
> against a defendant or that the judge has previously heard the
> evidence are generally considered insufficient reasons to
> disqualify a judge. *See Rivera v. State*, 717 So. 2d 477, 481
> (Fla. 1998). Although the parties have not cited any Florida
> case addressing the issue of whether a trial judge is obligated
> to recuse himself or herself when reviewing a search warrant
> issued by the judge, the case law of other states consistently
> permits a judge to handle a motion to suppress under these
> circumstances.[3] We likewise hold that, absent additional
> circumstances,[4] the fact that a trial judge issued a search
> warrant is not grounds to require disqualification of that judge
> from hearing a motion to suppress evidence obtained as a
> result of the search warrant.
>
> > [3] *See Heard v. State*, 574 So. 2d 873, 874–75
> > (Ala. Cr. App. 1990); *Holloway v. State*, 293
> > Ark. 438, 738 S.W. 2d 796, 798 (1987); *Arnold
> > v. Commonwealth*, 421 S.W. 2d 366, 366–67
> > (Ky. 1967); *People v. Liberatore*, 79 N.Y. 2d 208,
> > 581 N.Y.S. 2d 634, 590 N.E. 2d 219, 224 (1992);
> > *Waupoose v. State*, 46 Wis. 2d 257, 174 N.W. 2d

503, 504 (1970); *State v. Toce*, 6 Conn. Cir. Ct. 192, 269 A. 2d 421, 422–23 (1969); *State ex rel. French v. Hendricks Superior Ct.*, 252 Ind. 213, 247 N.E. 2d 519, 525 (1969); *Trussell v. State*, 67 Md. App. 23, 506 A. 2d 255, 256 (Ct. Spec. App. 1986); *State v. Poole*, 472 N.W. 2d 195, 197 (Minn. Ct. App. 1991); *State v. Smith*, 113 N.J. Super. 120, 273 A. 2d 68, 78 (App. Div. 1971); *Irwin v. State*, 441 S.W. 2d 203, 208–09 (Tex. Crim. App. 1968). *But see Bliss v. State*, 282 Ark. 315, 668 S.W. 2d 936 (1984).

[4] *See* Fla. R. Jud. Admin. 2.160; *Thompson v. State*, 759 So.2d 650 (Fla. 2000) (stating prior adverse ruling, alone, not sufficient).

Because Cano raises a state law claim couched in terms of a violation of due process and a fair trial, the claim is not cognizable on federal habeas. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988). Disqualification of judges in a Florida court is governed by a state statute and a state rule of procedure. Fla. Stat. § 38.10 (2002); Fla. R. Jud. Admin. 2.160 (2002); *Wall v. State*, 238 So. 3d 127, 142 (Fla. 2018). Whether disqualification was appropriate is an issue of state law, and a state court's determination of state law receives deference in a federal court. *Hendrix v. Sec'y, Fla. Dep't Corrs.*, 527 F.3d 1149, 1153 (11th Cir. 2008). *Accord Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."); *United States v. de la Fuente*, 548 F.2d 528, 541 (5th Cir. 1977) ("Merely presiding at a pretrial suppression hearing does not disqualify a judge from conducting the trial on the merits.").

Cano argues that the state court unreasonably applied *Rippo v. Baker*, 137 S. Ct. 905 (2017), *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016), and

*In re Murchison*, 349 U.S. 133 (1955).  (Doc. 21 at 21–22)  Because the state appellate court's decision predates *Rippo* and *Williams*, the state court did not unreasonably apply the opinions.  (Doc. 13-4)  *Greene v. Fisher*, 565 U.S. 34, 39 (2011) ("As we explained, section 2254(d)(1) requires federal courts to focu[s] on what a state court knew and did, and to measure state-court decisions against this Court's precedents as of the time the state court renders its decision.") (citations and quotations omitted).

*In re Murchison* addresses a different issue and, consequently, the state court did not unreasonably apply that opinion either.  *In re Murchison*, 349 U.S. at 134 ("The question now before us is whether a contempt proceeding conducted in accordance with these standards complies with the due process requirement of an impartial tribunal where the same judge presiding at the contempt hearing had also served as the 'one-man grand jury' out of which the contempt charges arose."); *Walker v. Hadi*, 611 F.3d 720, 724 (11th Cir. 2010) ("State courts are not obligated to widen or enlarge legal rules set forth by the U.S. Supreme Court to contexts in which it has never decided.").  Ground Eight is denied.

## B.   Claims of Ineffective Assistance of Trial Counsel

In denying Cano's motion for post-conviction relief, the state court recognized that *Strickland* governs a claim of ineffective of assistance of counsel.  (Doc. 13-5 at 123)  Because the state court denied the grounds based on *Strickland*, Cano cannot meet the "contrary to" test in Section 2254(d).  Cano instead must show that the state court unreasonably applied *Strickland* or unreasonably determined a fact.

The presumption of correctness and the highly deferential standard of review require that the analysis of each ground begin with the state court's analysis.

## **Ground One**

Cano asserts that trial counsel was ineffective for not moving to strike the jury *venire* because none of the potential jurors were African American or Hispanic. (Doc. 1 at 5).  The post-conviction court denied the ground as follows (Doc. 13-5 at 124):

> The Defendant asserts that his counsel was ineffective [for] failing to move to quash the jury *venire* because there were no "members of the African-American and Hispanic races." In support, the Defendant alleges that the jury *venire* consisted of 35 White-race men and women while Manatee County consists of thousands of African-American[s] and Hispanics. The Defendant contends that he was denied a fair trial due to his counsel's failure to move to quash the jury *venire*.
>
> The test for such a claim is whether the Defendant's counsel's failure to object to the make-up of the jury was so prejudicial that he was denied a fair trial.[12] The Defendant claims that the lack of African-Americans and Hispanics on the jury denied him a fair trial[.] [H]owever[,] simply not having African-Americans and Hispanics on his jury does not imply that his trial was unfair. These assertions by the Defendant are conclusory and insufficient to meet the Defendant's burden of establishing a *prima facie* case based upon a legally valid claim.[13] Thus, his motion is denied on this basis.
>
>> [12] *See Martinez v. State*, 655 So. 2d 166, 168 (Fla. 3d DCA 1995) (citing *Knight v. State*, 394 So. 2d 997 (Fla. 1981)).
>>
>> [13] *See, e.g.*, *Kennedy v. State*, 547 So. 2d 912, 913 (Fla. 1989).

Cano's post-conviction motion (Doc. 13-5 at 54–56) did not allege that the underrepresentation of African American and Hispanic individuals was "due to systematic exclusion of the group[s] in the jury selection process." *Duren*

*v. Missouri*, 439 U.S. 357, 364 (1979).  Consequently, the motion failed to state a claim.  *Oliver v. Wainwright*, 795 F.2d 1524, 1531 (11th Cir. 1986) (affirming the denial of an ineffective assistance of counsel claim based on the failure to raise a fair cross-section challenge to the jury *venire* because "[the petitioner] does not allege specific facts to show that blacks were systematically excluded in his case").

Because the motion failed to state a claim, the state court did not unreasonably apply *Strickland*.  *Borden v. Allen*, 646 F.3d 785, 822 (11th Cir. 2011) ("To grant habeas here would be to open the door to habeas relief for any petitioner who files a boilerplate, unspecific petition for collateral relief.  We are convinced that Supreme Court precedent would not support such an approach.").  Ground One is denied.[8]

## Ground Three and Ground Five

Cano asserts that trial counsel was ineffective for not filing an expanded motion to suppress.  Cano contends that police unlawfully seized the videotape depicting him touching the victim's vagina from his business — not his home, and trial counsel did not raise that argument in the motion.  (Doc. 1 at 13–14) ("Ground Three").  Also, Cano contends that, when he was arrested, police searched his home without a warrant and relied on observations during that warrantless search to get a search warrant.  (*Id.* at 25–26)  Cano asserts that trial counsel did not raise that argument in the motion either.  (Doc. 1 at 23–27). ("Ground Five").  The

---

[8] Cano argues that the state court failed to cite portions of the record that refuted his claim. (Doc. 1 at 6–7) Because the motion failed to state a claim, the state court could not have concluded that the claim as alleged was refuted by the record.

post-conviction court denied both grounds as follows (Doc. 13-5 at 130–31) (state

court record citations omitted):

> The Defendant asserts that his counsel was ineffective [for] failing to argue as a basis for suppression of evidence that the police illegally searched his residence and business. In support, the Defendant contends that he was arrested at his front door and did not resist. The Defendant continues that he did not present a threat to the officers but, nevertheless, the officer[s] searched his apartment. The Defendant alleges that the victim acted as a government agent. The Defendant asserts that his business and residence were illegally searched because the police did not have a warrant.
>
> The record refutes the Defendant's assertions. The Defendant's counsel filed a motion to suppress based on a lack of probable cause to support a warrant being issued. The search was conducted pursuant to a warrant. Again, the only places searched by law enforcement pursuant to the warrant were the Defendant's residence and storage unit. Thus, the Defendant's motion is denied.

A detective testified that police seized the videotape depicting Cano touching

the victim's vagina from Cano's home.  (Doc. 13-3 at 537–40)  Police seized the

videotape on the same day that police arrested Cano.  (Doc. 13-3 at 537)  An

inventory attached to the executed warrant confirms that police seized the

videotape from Cano's home — not his business.  (Doc. 13-2 at 31–33)  The affidavit

in support of the warrant confirms that police did not rely on observations during a

warrantless search of Cano's home to get the warrant.  (Doc. 13-2 at 18–27)

Because an expanded motion to suppress would not have succeeded, the state court

did not unreasonably apply *Strickland*.

Cano argues that trial counsel should have further investigated the

suppression issue and the state court should have held an evidentiary hearing on

the post-conviction claims.  (Doc. 21 at 13–15)  Considering the state court record,

reasonable counsel would not have investigated further. *Williams v. Allen*, 598 F.3d 778, 793 (11th Cir. 2010). Also, because the record refuted the claims, the state court did not unreasonably determine facts. Ground Three and Ground Five are denied.

## Ground Four

Cano asserts that trial counsel was ineffective not calling Guadalupe Gonzalez as a witness. (Doc. 1 at 17–18) Cano contends that, if Gonzalez had testified, the jury would have discovered that Gonzalez lied to police, had sex with the victim and had a child with her, controlled and manipulated the victim, and provided the victim with a motive to fabricate her accusations against Cano. (Doc. 1 at 18) The post-conviction court denied the ground as follows (Doc. 13-5 at 124–25) (state court record citations omitted):

> The Defendant asserts that his counsel was ineffective [for] failing to call Lupe Gonzalez as a witness. In support, the Defendant alleges that Gonzalez was the person abusing the victim. The Defendant claims that Gonzalez would have testified that the victim was naive as to sexual matters and cast doubt on her credibility. The Defendant contends that Gonzalez was available to testify and his trial counsel knew who[m] he was. The Defendant concludes that he was prejudiced by his counsel's omission because the jury would have been less likely to believe the victim.
>
> To assert a facially sufficient claim of ineffective assistance of counsel for failure to call a witness, the defendant must (1) identify the prospective witness, (2) describe the substance of the witness's testimony, (3) state that the witness was available to testify, and (4) describe the prejudice resulting from omitting the witness's testimony.[14] The Defendant alleges a facially sufficient claim.
>
> [14] *See Nelson v. State*, 875 So. 2d 579, 582–83 (Fla. 2004).

> Upon review of the record, Lupe Gonzalez was noticed for deposition by the Defendant's counsel, which demonstrates that his counsel investigated Gonzalez as a potential witness. Additionally, the Defendant was not prejudiced by his counsel's omission. The testimony that the Defendant asserts Gonzalez would have made regarding the victim's naivety about sexual relations would not have affected the credibility of the victim. Accordingly, the Defendant's motion is denied on this basis.

Cano concedes that trial counsel deposed Gonzalez. (Doc. 1 at 20) ("Here, the state court correctly pointed out that counsel had deposed Gonzalez.") A deposition notice in the state court record confirms the deposition. (Doc. 13-5 at 133) Because Cano did not attach Gonzalez's deposition to his post-conviction motion to show that Gonzalez would have testified in the manner that he contended, his claim was speculative. *Ashimi*, 932 F.2d at 650.

Even if Gonzalez would have testified in the manner that Cano contended, his testimony would have neither impeached the victim nor exculpated Cano. *Reed*, 767 F.3d at 1263–64. Gonzalez's lies to police would have raised doubts about his own credibility — not the victim's credibility. The victim's relationship with Gonzalez after Cano moved out of her home would not have undercut the victim's testimony about the repeated sexual abuse while Cano lived in her home. If the victim had a relationship with Gonzalez after Cano was no longer in her life, the victim could not have accused Cano of sexual abuse to cover up that relationship. Even if Gonzalez had testified, the outcome at trial would not have been different and, consequently, the state court did not unreasonably apply *Strickland*. *Strickland*, 466 U.S. at 694. Ground Four is denied.

## Ground Six

Cano asserts that trial counsel was ineffective for failing to investigate and present exculpatory witnesses.  (Doc. 1 at 27–33).  Cano identifies eight women who would have testified that Cano never showed any interest in oral sex, never showed interest in their younger children, was rarely with the victim during his overnight paper route, and did not want to homeschool the victim.  (Doc. 1 at 28–33).  The post-conviction court denied the ground as follows (Doc. 13-5 at 125–26) (state record citations omitted):

> The Defendant asserts that his counsel was ineffective [for] failing to investigate and present exculpatory witnesses. The Defendant claims that he informed his counsel about the names and location of eight women that he had sexual relations with. The Defendant alleges that these women's testimonies would have established that the Defendant did not need to use the victim for his pleasure. Additionally, the Defendant claims that School Board Employees, Mary Donahue and [Suzanne], could have testified that the Defendant tried placing the victim in alternative schools before he opted for home schooling her. The Defendant alleges that his counsel failed to call Judy Smith and Jenny Taylor to testify. The Defendant claims that Judy could have testified that the Defendant spent time at her business and Jenny could have testified that she advised the Defendant to transfer the victim to another school.
>
> The Defendant's counsel was not deficient by failing to call the eight women to testify. The testimony that Defendant asserts each woman would have given was irrelevant to the charged offenses. The Defendant's sexual escapades would not have affected the outcome of the trial. As to the school employees, the Defendant was able to convey to the jury in his own testimony that he sought out alternative schools for the victim:
>
> [Counsel]:     All right. And as a result of
>                speaking with her teachers then,

did you think about it being a good
idea for her to change schools[?]

[Cano]:        To change schools, yeah.

[Counsel]:     And why did you think that?

[Cano]:        Because the school, Har[r]llee
               Middle School, clearly told me they
               couldn't help her, they couldn'[t] do
               anything about her.

[Counsel]:     All right. Now, in terms of trying
               to figure out what options or what
               choices were available, how do you
               do that, how do you find out about
               that?

[Cano]:        I contact[ed] the School Board
               again and ask[ed] them what could
               be done to switch a student to
               another school, and if they [had]
               any problems if I [placed] her [in]
               private school, and so we started
               discussing options.

As to Jenny and Judy, the testimony the Defendant claims that
they would have given is irrelevant to the charged offenses.
The Defendant's counsel's omission to call all the above women
to testify was not prejudicial to the Defendant. Accordingly, the
Defendant's motion is denied on this basis.

Transcripts (Doc. 13-5 at 134–35) confirm that Cano testified in the manner

quoted in the order.  Whether testimony by the women was relevant is an issue of

state law, and a state court's determination of state law receives deference in

federal court.  Fla. Stat. §§ 90.401 and 90.402; *Machin*, 758 F.2d at 1433.  Because

the trial court would have excluded the testimony by the women as irrelevant, trial

counsel was not ineffective for failing to present the testimony.  *Lindsey v. Smith*,

820 F.2d 1137, 1152 (11th Cir. 1987) ("A habeas petitioner who proposes alternative

trial strategy that would itself have proved futile has failed to demonstrate that the representation at trial fell below an objective standard of reasonableness.").

Also, Cano did not present affidavits or deposition testimony to show that the women would have testified in the manner than he contended. *Ashimi*, 932 F.2d at 650. Even if the women would have testified as Cano contended, the testimony would not have exculpated Cano. *Reed*, 767 F.3d at 1263–64. Cano's lack of interest in oral sex with the adult women or their children would not have undercut the evidence of his sexual interest in the minor female victim who lived with him. Even if the victim was absent from Cano's overnight paper route, Cano had an opportunity to sexually abuse the victim because they lived together. Even if Cano did not want to homeschool the victim, Cano did homeschool her which provided even more of an opportunity to sexually abuse the victim. Because Cano failed to demonstrate deficient performance and prejudice, the state court did not unreasonably apply *Strickland*. Ground Six is denied.

## C.    Claim of Ineffective Assistance of Appellate Counsel

## Ground Eight, Sub-claim — Handwritten Notes

Cano asserts that that appellate counsel was ineffective for not raising an issue of trial error on direct appeal. Cano contends that appellate counsel should have argued that the trial court erred by excluding handwritten notes that the victim forged in her mother's name to excuse her own absences at school. (Doc. 1 at 40) Cano raised the sub-claim in a petition under Fla. R. App. P. 9.141(d) alleging ineffective assistance of appellate counsel. (Doc. 13-4 at 194–96) The state

appellate court denied the petition in an unelaborated order.  (Doc. 13-4 at 201)
The unelaborated order is an adjudication on the merits owed deference under
AEDPA.  *Richter*, 562 U.S. at 99.

Strickland* applies to ineffective assistance of appellate counsel claims.
*Smith v. Robbins*, 528 U.S. 259, 285–86 (2000).  The state court concluded that
impeachment of the victim with the handwritten notes concerned a collateral
matter.  (Doc. 13-3 at 428)  Whether the impeachment concerned a collateral matter
is an issue of state law, and a state court's determination of state law receives
deference in federal court.  Fla. Stat. § 90.608; *Machin*, 758 F.2d at 1433.  Because
the impeachment concerned a collateral matter, the handwritten notes were
inadmissible extrinsic evidence.  *Caruso v. State*, 645 So. 2d 389, 394 (Fla. 1994)
("It is well established that if a witness is cross-examined concerning a collateral or
irrelevant matter, the cross-examiner must 'take' the answer, is bound by it, and
may not subsequently impeach the witness by introducing extrinsic evidence to
contradict the witness on that point.").  The issue on appeal would not have
succeeded and, consequently, the state court did not unreasonably apply *Strickland*.
*Pinkney v. Sec'y, Dep't Corrs.*, 876 F.3d 1290, 1297 (11th Cir. 2017).  The sub-claim
in Ground Eight is denied.

## **Evidentiary Hearing**

Cano requests an evidentiary hearing.  Because Cano fails to demonstrate
the need for an evidentiary hearing and the state court record refutes the grounds
in his federal habeas petition, his request for an evidentiary hearing is **DENIED**.

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Jones v. Sec'y, Fla. Dep't Corrs.*, 834 F.3d 1299, 1318–19 (11th Cir. 2016).

## Conclusion

Because Cano fails to meet his heavy burden under AEDPA, his petition for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Cano and **CLOSE** the case.

## Denial of Certificate of Appealability and Leave to Appeal *In Forma Pauperis*

A prisoner seeking a writ of habeas corpus is not absolutely entitled to appeal a district court's denial of his application.  Rather, a district court must first issue a certificate of appealability.  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Because Cano fails to show that reasonable jurists would debate either the merits of the underlying claims or the procedural issues that he seeks to raise, he is not entitled to a COA or leave to appeal *in forma pauperis*.  *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).  A certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Cano must obtain permission from the court of appeals to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 19th day of October, 2020.

_____
**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**